v. Harbor America, which is the real litigation issue. Pam, you want to turn the microphone down? It seems to have a rebound. Good morning. Yes, sir. I'm pleased to be here. My name is Kevin Jewell. I'm here for the appellant, Harbor America. I'd like to begin this morning by commenting on the supplemental letter brief submitted by the government in response to the court's questions. And first, regarding the court's first question about whether or not any of the contracts that were the subject of the APA reverted to Mr. Mire at termination. Interestingly, the government's first assertion in its supplemental brief was that Harbor America was not entitled to terminate the APA at all. But the government's assertion misses the point of the court's question, which was not whether Harbor America could terminate the APA. The issue is what happens to the client service agreements once Harbor America terminated the APA. And to that question, the government cites no case saying that the subject matter of the APA, those client service agreements, would have reverted to Mir following termination of the APA itself. The cases that we have cited in our supplemental brief stand for the proposition that the assets do not revert back to the seller absent an express provision in the agreement itself, which does not exist in this case. And the assets retained prior to the alleged termination? Correct. What's your position on the assets that would be accumulated through the garnishment after the termination? The payments that were received by Harbor America after the termination of the agreement have been deposited into the registry, and Harbor America is entitled to receive those back. I think that's without question here because even the government has, I think, now conceded in their supplemental brief that the termination of the contract has occurred at the latest in November of 2014. I thought there was some language in one of the contracts that even after termination, effective termination, that the commissions would continue to be paid. Is that not correct? That's not correct, Your Honor. There was no provision in the APA that provides for the ongoing payment to Mir of those commissions following termination. There's no provision, no survival clause or other provision in the agreement that provides for that. It is true that the APA outlines a payment. There are payment terms contained in that agreement, and there is no termination clause that is expressly set forth in the APA itself. But under Texas law, as I think we've explained in the supplemental brief, the contract is of indefinite duration, and pursuant to Texas law, Harbor America has the right to terminate that contract at will, and there are many cases that stand for that proposition. There's no provision whatsoever in the agreement that entitles Mir to retain a property interest in those payments in the future following termination, which was something he could have bargained for at the time the contract was signed, but he didn't. There was no provision in the contract that provides for any type of buyout of Mir or other type of compensation to him in the event of a termination of the APA. Well, why haven't you filed a declaratory action or something in federal court to determine whether there was, in fact, a termination? We filed the proceeding in state court. I said federal court. Correct. We filed the proceeding in state court because it was an issue of state law. Yes, so that doesn't really complete the circle. I'm sorry? You had the government dismissed from the state court action. Correct. The state court struck the government's termination intervention. That's correct, Your Honor. But the issue of state law and Mr. Mir's property interest in the contract has been determined. Federal garnishment. Correct. So you need, I think, I'm not giving you advisory opinion, but it seems to me you would need to file something within the federal court to terminate the contract or to have a judge say that it was terminated and then that would ostensibly prevent the collection of the commissions. Correct. I understand the court's question, and I think there is authority for the proposition that the federal court would decide the issue of the property rights and the property rights that the judgment dinner has. However, I don't think that applies here for a couple of reasons, one of which is that I don't think the government has raised that issue under the garnishment statute itself. Under the Act, and this is Section 3205, the Garnishment Act, under Section C-5 of that statute, after the garnishee files an answer, which we did, the judgment debtor or the United States may file and has 20 days to file a written objection to the answer and request a hearing. The government never did that in this case. We filed an answer and we disputed Mir's ownership over these contract payments, and we don't believe that the government ever put that issue in front of the federal court properly under the statute because they never invoked that provision and never filed an objection to our answer. Mr. Mir filed an objection in federal court, but he filed an objection to the garnishment writ in which he argued that several exemptions applied to the compensation, but even he never filed an objection to our answer. And then the court went ahead and issued a disposition order without the government having even objected to our answer and our dispute to the property rights. So we don't believe that that was even an issue that was properly put before the federal court, and the federal court has never made any findings on the property rights of Mr. Mir regarding those contract payments. And this court has held, as recently as 2006, that a garnishment writ is properly dissolved when a federal court does not make proper findings or have the evidence before it in which to determine or to make a finding of the property rights of the judgment debtor. So said this court in the F.G. Hemisphere case at 455 F. 3rd, 575. And in that case, the court dissolved the writ of garnishment because there wasn't a finding of the property rights of the judgment debtor and there was no evidence presented. And we think that's the issue here because the federal court did not properly have that in front of it. Well, you're depending on the filing in state court in April for terminating the contract? We are not solely depending upon that, but we think that issue, that is one reason why we had the rights to terminate. But we, in our view, we had the right to terminate these agreements with or without the state court order. But in an abundance of caution, we filed the state court action to receive this. Other than that, because your petition there only adds prospectively if it may terminate the agreement of declaratory judgment. So what else do you depend on for the termination being in April? Our petition in state court was not solely restricted to prospective relief because the petitions are construed liberally in Texas. And then our summary judgment motion on the declaratory judgment claim specifically asked for a termination date of April 2014, thus giving notice to Mr. Muir and all of the parties to which they responded and filed a summary judgment response. And then the trial court issued an order. How much is coming in each month as commissions? How much money is coming in each month? Based on the notes that I have, and I haven't been personally involved, but the amount of money that has come in or that did come in and was deposited up to November of 2014 is about $312,000. And then subsequent to that, to the present, we've got another, say, $550,000 or so that's in the registry. So it's a significant sum. Going back to the question in the supplemental briefing, if you terminate it, what's your best authority to say that you get to keep the assets and stop paying the commissions? You cited some of these property, real property cases in your brief. What do you think is the most on-point case that supports your view? Well, I don't have one that's on all fours factually, but there were several cases that said under Texas law that we were excused from performing once the breach occurred. I'm not sure there's a best one out of the five or so that I cited in the supplemental brief, but I do want to draw the Court's attention to an additional case that I found preparing for today called Jack v. State at 694 Southwest 2nd 391. That's an opinion from the San Antonio Court of Appeals in 1985, which addressed whether or not a party was excused from making payments into the future under what was called in that case a services contract. And the Court held that due to the party's material breach, the other party was in fact excused from making those future payments. And if that is true, and that principle applies here, then Mr. Muir would have never acquired a property interest in those payments at all. And given that instance, the writ of garnishment would have never attached to any property interest of Mr. Muir. And in that regard, I also want to bring the Court's attention to one more case from the Sixth Circuit, 1965, Walker v. Paramount at 353 F. 2nd 445. And that was a case where the Sixth Circuit addressed whether future contract payments that were not due and owing under the agreement were subject to garnishment. And the Sixth Circuit held that they were not, because they were not absolutely owed at the time. Why did you wait so long to terminate? I mean, you're invoking this clause about illegal conduct, which it seems like you knew about long before you actually tried to terminate. So what was the delay and did it cause a problem for you? Well, I don't think it presents a problem because we stopped performing in April of 2014 by stopping the payments. And we put Mr. Muir on notice that we considered his conduct to be a breach of the agreement. We wanted the extra assurance through the state court proceeding that we would have an order authorizing a termination by state court order. And so we were acting out of an abundance of caution. But that does not deprive us of the right to terminate the agreement with an effective date that preserves our interests and our rights under the agreements and our rights to withhold the payments because we were excused from having to give them. Wasn't the illegal activity in 07? 07 and before. So why did you wait until? We didn't know about it. And for many years, Mr. Muir was telling us that he was innocent and he was being framed.  You knew about the allegations. We knew about the allegations, but he was telling us for a long time that they were not true and that he was being set up. And it wasn't until we got the actual judgment of the conviction before we realized. And that was in March of 2014 when the actual judgment was signed. And then we realized, well, maybe he's not to be believed. When was he indicted? I couldn't give you the exact date. 2011, 2010, I can't remember the exact date. That's a long time. It was a long time before the judgment. All right. Our main point, Your Honors, is simply that regardless of whether the termination was in April 2014 or November 2014, the fact is the contract's been terminated. We had every right to terminate it. The trial judge should have terminated the writ of garnishment proceeding and dispersed the funds back to us. At a minimum, those funds that were deposited that related to payments from November 2014 forward. And we think that constitutes error. We think that error is clear on the face of the record. If there's no further questions, I'll reserve the rest of my time and address the Court on rebuttal. Thank you. Ms. Callahan. Good morning, Your Honors. I will address his points, but I want you to understand the bigger picture of this case because this appeal marks yet another brazen attempt by Harbor America to keep Mears money. And in doing so, to deprive the American taxpayer of a right to recovery. I would ask you not to be fooled. Harbor America is not a victim in this case. It is simply a wolf in sheep's clothing. Not only was Harbor America aware of Mears' indictment, but it was intimately familiar with his operations. Two of its executives that were with Mears during the alleged criminal activity are now employed at Harbor America. And they were during this entire time. Is that in the record? Yes, Your Honor. And it's actually, it begins at 1918. It's part of Mr. Mears' affidavit. We also subpoenaed that information from Harbor America, and it was also information uncovered by the federal agents when they were investigating Mr. Mears. Those executives cooperated in the investigation and provided a lot of the information that was used to indict and convict him. What you should also be aware is that Mears divulged a $65 million tax liability to Harbor America during the due diligence phase of the APA in 2008. So, indeed, the beginnings of the indictment had already started to occur. As you're aware, the victim in this case is the Internal Revenue Service, the American taxpayer. Mr. Mears is required to pay $10 million. He's ordered to pay $10 million as part of his restitution. But, indeed, his co-conspirators are in upwards of $132 million. It was a very large conspiracy. Despite the knowledge of Mears' activities, Harbor willingly used him to profit, to profit its companies and continue to profit to this day from the client service agreements that they now have. And I will get to that in a minute. I want to talk about those client service agreements. Harbor America did not end their relationship with Mears when he was indicted in January of 2011. They didn't end the relationship when he pled guilty in November of 2011. And, indeed, they didn't end it when he was convicted and sentenced in February of 2014. They did not end that relationship until the government notified them of the government's lien and its desire to begin collection efforts. And we notified them on March 20th of 2014. What's the legal consequence of that delay? Is there an estoppel argument or some other basis for saying they can't seek termination because they waited so long? You know, at the very least, it's unclean hands. It's a company that knew what he was doing. They were using him to profit because he was a liaison for them. And all of this is in the record, by the way. It's still with his affidavit in 1918 and the following documents. But they were using him to profit. They needed his face. He had the relationships with those clients. He had got the client services agreements. And he was the person that they went to when there was a problem or when those people had a problem with their client services agreements. So, at the very least, unclean hands. At this juncture, certainly unjust enrichment. What is the basis for the government collecting funds after the November judgment? As far as the IRA, the government will concede that it terminated. But the termination date was not April of 2014. The termination date was when it sent its notice of termination, pursuant to the IRA, which was November 24th, 2014. But those contract payments are minimal. We're talking they're typically somewhere between $1,000 to $2,000 a month. It's not the valuable contract because it wasn't the asset that was purchased. And the government would have conceded that back then. The problem is there's a disagreement over which date was involved. It's not the April 22nd date. And if you look at their original petition, even in the state court action, they didn't ask for it to be terminated as of this date. It doesn't read that way in the relief section. They just asked that it be terminated. And it had to contemplate that this would not happen until somewhere down the road. And, indeed, it didn't happen until November 2014. We do not contend that the APA was subject to termination. It does not contain a termination provision in it. The only way to terminate that APA is a breach of warranty. It's not subject to the same provision as the IRA. And in Texas, under state law, breach of warranty's relief is damages. And in their first amended petition and, again, in their second amended petition in the state court action, that is exactly what they have pled. They are now seeking damages under those breach of warranty claims. But you don't get your cake and the ability to eat it, too. You have one or the other. They have made the comment. What can they effectively do to terminate paying these commissions? I'm sorry? What can Harbor America do at this point to avoid payment of these commissions? I'm not sure that under the APA they can do anything. They could potentially pursue the breach of warranty claims in the federal court, which has jurisdiction over those contracts, precisely because the government owns the payments from those contracts. Federal law shows state law is controlling just to determine the property interests. And contrary to what is in their briefs, state law does not equate to the state court's ruling. Those are two separate issues. State law is, did Mr. Muir have an interest in the APA? And the answer is yes, because it's not a performance-based contract. It's not a services agreement similar to the cases they're citing. It's not a rental similar to the cases they're citing. They bought an asset, and the contract itself states that. They purchased the client services agreement. And as payment for that purchase, Mr. Muir received 50 percent of the commissions indefinitely. That's the language in the APA. Whether or not it was terminated. Yes, Your Honor. It couldn't be terminated. So opposing counsel was incorrect in answering me. Yes, Your Honor. That is the government's position. And in proceeding through this, Harbor America has attempted to thwart a federal court order. The federal court had a keen interest in preserving its enforcement of, and right to recover restitution for the victim in this case, the American taxpayer. But they didn't come to the federal court until after. They've told the court now that the federal court would likely have jurisdiction over some of this. The problem with that is when we remove the state court action in May of 2014, they immediately filed a motion to remand, citing that the federal court had no subject matter jurisdiction. The United States filed simultaneously with its removal action a motion to transfer a venue to the Western District of Texas. The statute only allows us to go up in the district in which we are in, and they had filed their state court action in Harris County, which is in the Southern District of Texas. And so we had to remove it in the Southern District of Texas, and then we sought to transfer it over to the criminal court in the Western District of Texas. And instead they filed a motion to remand. That motion to remand is not reviewable, and the government could not appeal because our removal statutes were 1441 and 1444, 28 U.S.C. 1441 and 1444. Under 28 U.S.C. 1447D, only 1442 and 1443 are subject to review. So we had no choice but to go into the state court action. And Harbor America even told the federal court in August 2011 that the government would have a full opportunity to litigate the issues before the state court. It's written in their document, a representation that they made. A month later, they turned around with no notice to us other than the notice of hearing and moved to strike us from that action. Mr. Muir was incarcerated at the time. All of his money was subject to a restraining order of the federal court. So he had little representation. He had attorneys there, but he had little representation, meaning that they were unfunded attorneys. So a federal court, you're saying there should be a federal forum for this question. A federal court's never decided whether they can terminate the APA. Should we send it back to the district court for him to make that determination? Should we make it in the first instance? I think that that is exactly one of the options this court has available because I think. . . I have one more question. Judge Costa said should we send it back. . . Should we decide in the first instance? We decide. Do we have the facts and the jurisdiction and the power to make that decision or does it need to go back to a district judge? I think it should go back to the district judge for that decision. And it's what we've alleged all along, that this issue is properly before the federal court, not the state court. Because the district judge here just kind of said I'm not even going to worry about termination. That's correct. You're not endorsing that entirely. You want him to decide. . . Ignore the state court. Don't worry about what the state court said, but the district court here should decide whether the APA is subject to termination. Yes, Your Honor, because it's a property interest. And contrary to what he just said that we never objected, we never objected because in their amended answer they conceded, made a judicial omission, that it was holding commission payments belonging to Meir. And that is a quote from that answer. Had I known that what they were saying is, well, we don't have anything belonging to Meir, we would have immediately objected and done discovery and proceeded on. But that's not what happened. They made a representation and then later they reneged on that representation after the hearing and they didn't come to the hearing on Meir's objections, which is the hearing prior to entry of the final order of garnishment. They chose not to participate in that. And they later objected to the government's motion for entry of the final order of garnishment. So we didn't have, one, we believe they were Meir's payments based on Harbor America's representations. We relied on what they said to the federal district court. And, two, they never contested it afterwards. In the responses that the government gave to Meir's objections, we expressly stated that the money belonged to Meir. Those were the basis of those objections. Harbor America was served with all of those. And not once did they ever come forward and say, you misunderstood our answer. It doesn't belong to Meir. And so we proceeded through the entire garnishment process until the very end, until the motion for entry of the final order, before they ever came forward to say, you misunderstood what we said. That answer, the representation and their amended answer was a judicial omission and they are bound by it. They cannot come back today and say, you misunderstood. It was very clear. One other thing to bring to this court's attention, it came out in the supplemental exhibit that was filed with the court, that state court action is questionable at best today because, indeed, that declaratory action was dismissed for want of prosecution. And this is also in the record at 3072. What happened in that action is, indeed, they severed the declaratory action from the remaining causes of action. But the problem was that in their declaratory action, they sought attorney's fees. A severance order can, indeed, make the state court's decision appealable, but only if all of the issues and claims before the court have been decided. They were not. The attorney's fees issue remained. And so what happened is they then began to try to non-suit the attorney's fees issue without prejudice in order to proceed to final judgment. And the federal court, because this action was pending before the Fifth Circuit, enjoined the attorneys from continuing on in that endeavor until this court could decide what the status was in an attempt to maintain the status quo because this case is a procedural nightmare already. It didn't need another twist and turn in the middle of it. And so what we do is we enjoined and we stopped. And in January of 2016, this year, that action was dismissed for want of prosecution. So at this juncture, the question is, does it even still exist? If we don't remand, precisely what are you asking us to rule if we rule on the district court's judgment that's before us? That the district court was correct in its decision denying their motions to terminate the garnishment. And the reason . . . What is the effective date of not when it begins but when it ends? Is it that November date in 14? For the IRA, it is November 24, 2014. And for anything else? That it was not terminated, that there was no provision terminating in it. It was a misrepresentation to the state court. And because the government owned the rights to those commissions and was not a participant in that state court action, the government could not be bound by that decision. So the garnishment would be ongoing? Yes, Your Honor. Because the APA is not terminable, right? Yes, Your Honor. If this Court has no further questions, I have nothing further. Thank you. Briefly, Your Honors, I have to take issue with the suggestion that Harbor America was in some way involved in a conspiracy with Mr. Muir. There is absolutely no evidence at all that we were intimately involved with Mr. Muir's conduct or even knew about it. Harbor America has never been the subject of an investigation. Mr. Muir was indicted, not us. And the attempt to paint Harbor America as a wrongdoer here because of Mr. Muir is simply unsupported in the record and has nothing to do with our contract rights under Texas law. Second, in response to Judge Costa's question about delay, if you will, on Harbor America's part and the timing of its letter, counsel mentioned doctrines such as unclean hands or unjust enrichment. Where has that been pleaded or presented to the district court? That's never been raised, not once, not by the government and not by Mr. Muir. No one has ever objected to our termination letter or the dates that we contended were the effective dates of termination. Not once has anyone raised that at all. Third, counsel contends that the contract, specifically the APA, cannot be terminated. That is simply not true under Texas law. First of all, the UCC on which counsel is relying for the proposition that our only relief is for damages and not for termination simply does not apply. The APA does not involve the sale of goods. And we've cited this court to authority in our supplemental brief speaking to that issue. And there is, in fact, another case I'll give to the court called Portland v. Beville at 619 Southwest 2nd 241, a 1981 decision from the Corpus Christi Court of Appeals, which, in an analogous way, holds that the sale of things like documents, money, or investment securities do not constitute the sale of goods. Okay, so the UCC doesn't apply, but where do you get a right, where do you find that there's a termination provision? Under Texas law. You have a right to terminate a contract that is indefinite in duration, as the APA was. That is not an agreement that exists in marvel to the end of time. He can breach those provisions, and he did breach them. We have rights. And if Mr. Muir wants to claim that our termination— What were his obligations? He just sat there and collected 50 percent of the commissions. What were his obligations? He's got ongoing obligations to conduct himself lawfully under the contract, under several provisions which he failed to do. He has ongoing identity obligations. He has other obligations under that agreement. And he may contend, and if he does contend, that our termination of the APA constitutes a breach of that agreement, then he can raise that issue, and I think he did raise it in the state court proceeding that's still alive, but he'll lose on that point under Texas law because we are excused from future performance once he materially breaches, as the state court has held. The government has cited no case, not a single case from Texas or any federal court, that says that a contract such as this can never be terminated. There isn't one. In response to the court's question regarding the proper disposition, remand versus deciding this issue in the first instance, I don't think the court can decide the property rights of Mr. Muir in the first instance because I don't think it has the evidence and I don't think it has the pleadings in front of it to allow it to do that. By the court, you mean us. Correct, this court. Lastly, we never conceded that the future payments were Muir's property. The government has consistently taken our pleadings out of context, and we repeatedly asserted in our answer and in subsequent documents, including in our motions to dissolve or objections to the writ and to our motions to terminate it, et cetera, we consistently told the government and Muir that our position was that he was in breach and that that money didn't belong to us, it did not belong to him anymore, that he had no property interest in it. The government is well aware of that fact. Muir was well aware of it. They were aware of our state court petition in which we alleged it. And when did you tell him that? We told him that in every pleading that we filed. The answer, excuse me? What's the date? I don't have the date of the answer in front of me, but it would have been in May of 2014, I believe. He got indicted in 2011. That's true. But like I said, the judgment was not entered, the conviction was not made until 2014 in March. And he had been telling us all that time that he was innocent and that he was being framed. So we asserted that position as soon as the conviction came along and we were And we're not disputing his property interest in the money that he received prior to April of 2014. That money was paid. It's already been, I guess, taken by the government or attached pursuant to the writ. All right. We have your argument. Thank you. Thank you, Your Honors.